## WESSON, INC. *v.* JOHN HYCHKO
### (13119)

HEALEY, SHEA, CALLAHAN, SANTANIELLO and MENT, Js.

Argued June 11—decision released August 18, 1987

*Robert P. Hanahan,* with whom, on the brief, was *Brian A. Barnes,* for the appellant (defendant).

*Michael J. Daly,* with whom, on the brief, was *Robert J. Crean,* for the appellee (plaintiff).

SHEA, J. The principal issue in this appeal is whether a distributor of motor vehicle fuel may recover from the purchaser the tax that the distributor has been required to pay to the state pursuant to General Statutes § 12-458,[1] when he has neglected to set forth the

[1]"[General Statutes] Sec. 12-458. RETURNS. RATE AND PAYMENT OF TAX. EXEMPTIONS. Each distributor shall, on or before the twenty-fifth day of each month, render a return to the commissioner. Each return shall be signed by the person required to file the return or by his authorized agent but need not be verified by oath. Any return required to be filed by a corporation shall be signed by an officer of such corporation or his authorized agent. Such return shall state the number of gallons of fuel sold or used by him during the preceding calendar month, on forms to be furnished by

amount of such tax in billing the purchaser for the sale, as provided in that statute and also in General Statutes § 12-457.[2]

The complaint in this action alleged that the plaintiff, Wesson, Inc., had sold to the defendant, John Hychko, fuel that was subject to the motor vehicle fuel tax and that it had paid to the state an assessment of

the commissioner, and shall contain such further information as the commissioner shall prescribe. The commissioner may make public the number of gallons of fuel sold or used by the distributor, as contained in such report, notwithstanding the provisions of section 12-15 or any other section. For purposes of this section fuel sold shall include but not be limited to the transfer of fuel by a distributor into a receptacle from which fuel is supplied or intended to be supplied to other than such distributor's motor vehicles. On said date and coincident with the filing of such return each distributor shall pay to the commissioner for the account of the purchaser or consumer a tax on each gallon of such fuels sold or used in this state during the preceding calendar month of fourteen cents before July 1, 1984, fifteen cents on and after July 1, 1984 . . . . Each distributor, when making a taxable sale, shall furnish to the purchaser an invoice showing the quantities of fuel sold, the classification thereof under the provisions of this chapter and the amount of tax to be paid by the distributor for the account of the purchaser or consumer. Any distributor failing to pay said tax when due shall be liable for interest at the rate of one and one-fourth per cent per month or fraction thereof on the amount of tax from the time when the tax becomes payable until the same is paid."

[2] "[General Statutes] Sec. 12-457. RECORDS TO BE KEPT BY DISTRIBUTOR. STATEMENT TO PURCHASER. Each distributor shall keep an accurate record of the number of gallons of such fuels purchased, manufactured, compounded or received by him, the date of any such purchase and the number of gallons sold or used by him. He shall deliver, with each consignment or delivery of such fuels to any purchaser within this state, a written statement of the names and addresses of the vendor and vendee, the number of gallons sold and the date of sale and delivery. Such written statement shall set forth whether or not the required state tax has been charged thereon. Each such record and such statement shall be preserved by such distributor and such purchaser, respectively, for a period of at least three years and shall be offered for inspection upon demand of the commissioner or any officer or agent designated by him. The commissioner shall cause such records and statements to be regularly audited as he shall prescribe and each distributor shall satisfactorily account for all such fuels as have been sold or used by him. Any such fuels unaccounted for by the distributor for which a satisfactory explanation cannot be submitted shall be construed to have been sold or used."

the tax on the sale, for which the defendant was claimed to be liable. The trial court rendered judgment for the plaintiff in the sum of $9098.32, the amount of the tax and interest thereon that the plaintiff had paid.

In his appeal from the judgment, the defendant claims error in the court's conclusions: (1) that § 12-458 imposes the tax on the purchaser as the primary obligor; (2) that the plaintiff could recover the tax by way of subrogation; and (3) that the plaintiff was also equitably entitled to recover the amount of taxes it had been compelled to pay "for which another is legally or equitably bound."[3]

The parties presented a written stipulation to the court containing the relevant facts and no additional evidence was introduced. The plaintiff is a distributor of fuel and oil products in Connecticut. The defendant operates various businesses located on Huntington Avenue, Waterbury, in which machinery and equipment are used. Between October, 1983, and June, 1985, the plaintiff sold motor vehicle fuel to the defendant, who paid the plaintiff for the amounts billed as the fuel was delivered. During that period the plaintiff was unaware of its statutory responsibility to collect the tax upon each sale as it was made.

The state, after auditing the plaintiff's accounts, assessed a deficiency of $9098.32 in taxes and interest relating to the defendant's account. The plaintiff paid this sum to the state. Its request for reimbursement has been refused by the defendant.

I

The defendant claims that, as the purchaser, he is not the primary obligor for the tax imposed by § 12-458

---

[3] The defendant phrases this issue as whether he was "unjustly enriched at the expense of Wesson." The trial court, however, did not use the term "unjust enrichment," but relied upon "the general rule that a person who, not acting voluntarily, pays taxes for which another is legally or equitably bound, is entitled to recover from such other the amount paid."

upon motor vehicle fuel, because "the fuel tax is not a user tax, but is a tax on the distributor." The statutory language imposing the tax, however, is that "each distributor *shall pay* to the commissioner *for the account of the purchaser or consumer* a tax on each gallon of such fuels sold or used in this state . . . ." (Emphasis added.) Another provision of the statute requires the distributor to "furnish to the purchaser an invoice showing . . . the amount of tax *to be paid* by the distributor *for the account of the purchaser or consumer.*" (Emphasis added.)

This court has previously construed the provision under which the tax is paid by the distributor "for the account of the purchaser or consumer" to indicate that "the intent of the legislature was to impose an excise tax upon persons using the highways for the purpose of propelling motor vehicles upon them." *Anastasio* v. *Gulf Oil Corporation,* 131 Conn. 708, 716, 42 A.2d 149 (1945). "[W]hile the tax was to be paid by [the distributors] it was in fact one imposed upon those who used the gasoline for that purpose; and the distributors were in effect agents of the state in collecting it." *Carroll* v. *Socony-Vacuum Oil Co.,* 136 Conn. 49, 53, 68 A.2d 299 (1949). "Under Connecticut law the wholesaler is the collecting and remitting agency . . . . He pays 'for the account of the purchaser.' " *Ciarleglio* v. *Benedict & Co.,* 127 Conn. 291, 293, 16 A.2d 593 (1940); see *Spencer* v. *Consumers Oil Co.,* 115 Conn. 554, 559, 162 A.2d 23 (1932). Statutes of other states taxing fuel used in motor vehicles have been construed similarly to impose an excise tax upon those using motor vehicles on public highways. *Monamotor Oil Co.* v. *Johnson,* 292 U.S. 86, 93, 54 S. Ct. 575, 78 L. Ed. 1141 (1934); *Commonwealth* v. *Wallace,* 294 Mass. 31, 34, 200 N.E. 406 (1936).

We conclude that the plain intent of the legislature was to impose the burden of the tax upon the motor

vehicle fuel purchaser or user, and to make the distributor responsible only for its collection and payment.

## II

We shall consider together the defendant's second and third claims, that the doctrine of subrogation is inapplicable and that the plaintiff was not equitably entitled to recover the taxes it had paid.

As the trial court noted, there is no statutory provision expressly authorizing a distributor to recover from a motor vehicle fuel purchaser the tax due upon the sale. The requirement of General Statutes § 12-457 that the distributor include in his invoice to the purchaser a written statement indicating "whether or not the required state tax has been charged thereon" implies that a distributor may absorb the tax if the invoice so discloses. By contrast, our sales and use tax imposed on retailers provides that "[r]eimbursement for the tax . . . shall be collected by the retailer from the consumer . . . [and] shall be paid by the consumer to the retailer. . . ."; and that "[s]uch tax shall be a debt from the consumer to the retailer, when so added to the original sales price, and shall be recoverable at law in the same manner as other debts . . . ." General Statutes § 12-408 (2).

We are not persuaded that the absence of an express statutory provision for reimbursement of the motor vehicle fuel tax forecloses the distributor from resorting to appropriate equitable remedies where he has been legally compelled to pay a tax the incidence of which the legislature intended to impose upon the purchaser. "Where property of one person is used in discharging an obligation owed by another . . . under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee . . . ." Restatement, Restitution § 162.

This doctrine is inapplicable where the payment has been made "officiously," i.e., where the circumstances do not justify the interference with another's affairs resulting from conferring a benefit upon him. Restatement, supra, § 2. A person does not act officiously when he pays another's debt under a mistake or when he has discharged an obligation for which he is also liable, but which another should equitably have paid. Restatement, supra, § 162, comment b; see Restatement, supra, §§ 43, 76.

The payment of taxes by one not primarily responsible therefor is a situation where subrogation has been permitted. 73 Am. Jur. 2d, Subrogation § 66. In *Hart* v. *Tiernan,* 59 Conn. 521, 21 A. 1007 (1890), this court allowed a tax collector, who was statutorily liable to the town for municipal taxes for which tax liens had been filed and who had accordingly paid the taxes due, to be subrogated to the rights of the municipality under those liens. In a similar case we declared: "That he had all the rights under the lien that could be asserted by the city is true." *Cole* v. *Rice,* 74 Conn. 680, 683, 51 A. 1083 (1902). These cases, however, "arose under the peculiar provisions of the charter of the city of Waterbury" that were construed to provide to the tax collector who had paid the taxes not only the right to reimbursement from the delinquent taxpayer but also "all the securities and remedies against the delinquents held by the community . . . ." *Sperry* v. *Butler,* 75 Conn. 369, 374, 53 A. 899 (1903). "When the case is one of subrogation of the individual to public rights and remedies, the situation assumes an aspect not presented where the substitution relates to private rights. Questions of public policy, questions as to the propriety of turning over the governmental machinery to individuals and conferring upon them the powers of the organized public, at once arise." Id., 373. Thus, subrogation to a governmental claim for taxes does not

necessarily make available all of the remedies created for the benefit of the government in collecting taxes; id., 373–74; or give a private individual seeking indemnification for payment of such taxes the preferential status accorded to tax claims asserted by the government. *In re Page Express, Inc.*, 220 F. Sup. 14, 18–19 (D. Conn. 1963).

The plaintiff distributor in this case does not, by virtue of its payment of the motor vehicle fuel tax, assert any special status or privilege that the state might have relied upon in collecting the tax or claiming priority over other creditors. See General Statutes §§ 12-458e, 12-461a, 12-461b, 12-461c, 12-475. This is an ordinary civil action for debt based upon the undisputed circumstance that the plaintiff has been compelled to pay a tax that it mistakenly failed to include in its invoice to the defendant. The essential question is whether it is equitable to order reimbursement from the purchaser on whom we have concluded the burden of the tax was intended to fall. In similar situations in other jurisdictions recovery has been allowed. *Brandtjen & Kluge* v. *Fincher*, 44 Cal. App. 2d 939, 111 P.2d 979 (1941) (retailer against whom state assessed an uncollected use tax entitled to recover amount paid from purchaser deemed to be primarily liable); *Drake* v. *Thayer Manufacturing Corporation*, 105 Ga. App. 20, 123 S.E.2d 457 (1961) (seller not estopped from recovering amount paid for uncollected use tax from purchaser claiming to have relied upon misrepresentation of seller as to taxability of sale); *American Cast Iron Pipe Co.* v. *Volentine*, 191 So. 2d 661 (La. App. 1966) (payment of uncollected sales tax by seller created a debt owed by the purchaser); *Howitt* v. *Street & Smith Publications, Inc.*, 251 App. Div. 461, 462, 297 N.Y.S. 3 (1937) (reimbursement allowed for uncollected sales tax paid by seller "primarily liable for the payment of it to the city" acting as agent for the city in its collec-

tion); *Reaves & Becker Co.* v. *Wilkes Co.*, 392 S.W.2d 379, 381 (Tex. Civ. App. 1965) (seller's action to recover previously unbilled sales tax from purchaser not barred because of its "mistake of law"); *Morrison-Knudsen Co.* v. *Department of Revenue,* 6 Wash. App. 306, 311–12, 493 P.2d 802 (1972) (where statute imposes on seller "duty to collect and remit the tax" and on buyer "the duty to pay the tax," buyer is ultimately responsible for previously unbilled tax, which constitutes a debt owed to seller). These cases employ different theories to allow recovery, and some rely on statutory provisions that preclude absorption of the tax by the seller. Once it has been determined, however, that the incidence of the tax was intended to fall upon the purchaser and that the liability imposed on the seller was intended as a device to enforce his responsibility to collect the tax, the purchaser has been required to reimburse the seller despite his error in failing to include the tax in his original invoice or estimate.

We conclude that, based upon the stipulated facts in this case, the plaintiff was entitled to recover under the principle that it has been legally compelled to pay an obligation for which primary liability is imposed by § 12-458 on the defendant purchaser, who "would be unjustly enriched by the retention of the benefit thus conferred." Restatement, supra, § 162. There are no circumstances presented by the stipulation that militate against application of this equitable doctrine. The plaintiff has not acted "officiously," but has been compelled to pay the tax to the state in order to protect its own interests. Restatement, supra, § 2, comment (a). No priority has been sought over other creditors, such as the state might have asserted in pursuing a claim for the delinquent taxes against the defendant. See *Sperry* v. *Butler,* supra, 373. The fact that the plaintiff had mistakenly assumed the sale was not taxable does not preclude resort to the equitable remedy of subrogation.

Restatement, supra, § 43. Neither the pleadings nor the stipulation indicate that the defendant has suffered any loss or prejudice resulting from the failure to include the tax in the invoice submitted at the time of the sale.[4] No claim has been raised of an agreement by the plaintiff to absorb the tax. We agree with the trial court that the plaintiff was entitled to recover from the defendant the amount of the assessment for the motor vehicle fuel tax that it paid to the state.

The judgment rendered by the trial court in the sum of $9098.32 included $1605.69 of interest that the plaintiff had paid to the state because of its failure to pay the tax on the sale to the defendant when due. Although no separate issue concerning this portion of the judgment had been raised until inquiry by this court during oral argument, in responding the plaintiff conceded that it was erroneous for the trial court to have included in the judgment the interest resulting from its delay in paying the tax. Accordingly, the judgment should be revised, by eliminating the interest component, to reflect an award of only the amount of the tax paid to the state, $7492.63.

There is error only in the amount of the judgment, the judgment is set aside and the case is remanded with direction to correct the judgment in accordance with this opinion.

In this opinion the other justices concurred.

---

[4] It is possible that the delay caused by the plaintiff's failure to include the tax in its invoice at the time of the sale might have prevented the defendant from filing a claim for a refund of any portion of the tax paid on exempt fuel, such as that not used in motor vehicles "licensed or required to be licensed to operate upon the public highways of this state . . . ." General Statutes § 12-459 (a) (1). "Any claim for refund of said tax for fuel used during any calendar year shall be filed with the commissioner on or before March thirty-first of the succeeding year." General Statutes § 12-459 (b). No such claim of prejudice has been pleaded or briefed nor does the stipulation contain the facts necessary for consideration of such a claim.